IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AIR ALLIANCE HOUSTON, et al., | |
| *Plaintiffs*, | |
| v. | Case No.   1:25-cv-1852-PLF |
| DONALD TRUMP, et al., | |
| *Defendants*. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SIX-MONTH ABEYANCE**

In April, President Trump gave nearly one-third of coal-fired power plants across the country a free pass to cease their preparations to meet lower mercury and air toxic emissions standards. EPA updated those standards, known as MATS, just over a year ago. In doing so, EPA recognized that the vast majority of coal-fired power plants were capable of and indeed already limiting their emissions of these dangerous pollutants below what was required in its prior, 2012 standards. Nevertheless, with a stroke of his pen, the President in his April 8, 2025 Proclamation (supplemented in a July 17, 2025 Proclamation) exempted 71 facilities from their compliance obligations through July 2029 by summarily asserting, without evidence or even a gesture at source-specific analysis, that "technology to implement" that Rule is "not available." Proclamation 10914 of April 8, 2025, 90 Fed. Reg. 16,777 (Apr. 21, 2025).

The President's assertion is false,[1] and the President's action is unlawful. That unlawful action is having effects today. As prospective Intervenor-Defendant Talen Montana, LLC,

---

[1] EPA admitted as much in its recent proposal to repeal the 2024 MATS Rule, writing that the Colstrip Power Plant in Colstrip, Montana, "was *the only* facility unable to meet the lower

1

confirms in its motion to intervene, coal plants have already suspended actions to reduce their emissions to comply with updated standards. *See* Talen Memo. in Supp. of Motion to Intervene, Dkt. 29-1 at 4 (asserting that Talen Montana, operator of one of the exempted facilities, "has already made operational planning and compliance decisions in reliance on the Presidential Exemption"). Plaintiffs are entitled to prompt review and judicial relief to minimize and prevent harm to Plaintiffs, their members, and the public from the unlawful exemption proclamations.

The six-month abeyance Defendants request would deprive Plaintiffs of that timely review. A stay would impose substantial hardship on Plaintiffs and their members by depriving them of the emissions reductions that would flow from timely compliance with the standards. Plaintiffs' and the public's interests in promptly achieving the health protections afforded by the updated MATS rule far outweigh the modest burden on Defendants to defend the exemptions. The *potential* future repeal of parts of that rule—which EPA proposes to accomplish through a separate action under separate statutory authority—does not moot and should not delay review of the President's unlawful action. The Court should deny Defendants' abeyance request.

The Court should also deny Defendants' alternative request for a 21-day extension of their responsive pleading deadline. This case has been pending since June 12. Defendants' deadline has already been extended twice, most recently to September 19, 2025. Defendants have not shown good cause for further delay.

## BACKGROUND

Coal plants are one of the largest domestic emitters of hazardous air pollutants like mercury, arsenic, nickel, and other toxic metals. *National Emission Standards for Hazardous Air*

---

[filterable particulate matter] standard with *existing controls*." 90 Fed. Reg. 25,535, 25,541 (June 17, 2025) (emphasis added).

*Pollutants: Coal- and Oil-Fired Electric Utility Steam Generating Units Review of the Residual Risk and Technology Review*, 89 Fed. Reg. 38,508, 38,509 (May 7, 2024) ("2024 Rule"). Short-term exposure to these pollutants can result in profound central nervous system effects; chronic exposure can cause brain and kidney damage, cancer, developmental effects, and a range of other adverse health effects. *Id.* at 38,556.

To address those risks, EPA first promulgated hazardous air pollutant standards for coal- and oil-fired power plants in 2012 under Section 112 of the Clean Air Act, 42 U.S.C. § 7412. After hazardous air pollutant emission standards are established, the Act requires EPA to review developments in control technologies to determine if revisions are necessary. *Id.* § 7412(d)(6).

As a result of its Section 7412(d)(6) review, EPA revised the MATS in 2024. The 2024 Rule set more protective limits on arsenic, nickel, and other metals pollution, represented by a surrogate "filterable particulate matter" standard (setting a new "fPM standard"), and further restricted mercury emissions from a subset of plants using high-polluting lignite coal (the new "mercury standard"). 89 Fed. Reg. at 38,510. The 2024 Rule also required facilities to use continuous emissions monitoring rather than infrequent "stack testing" to demonstrate compliance with the new standards (the "CEMS" requirement). *Id*. And it tightened standards for controlling pollution during plant startup periods. *Id*. EPA projected that the 2024 Rule would reduce annual emissions of mercury by 900 to 1,000 pounds and annual emissions of arsenic, nickel, and other toxic metals by about four to seven tons per year, starting in 2028. *Id.* at 38,561; Ex. 3 to Suppl. Compl. at 8, ECF No. 31-5 (describing emissions reductions in 2028).

The 2024 Rule required coal plants to comply with the startup standard by January 2, 2025, and with the fPM standard, the mercury standard, and other requirements by July 6, 2027. *Id.* at 38,519, 38,564. The 2027 compliance deadline reflected EPA's assessment of the lead time

necessary for the regulated coal plants to procure and install necessary emissions controls, upgrade controls, or optimize or dial up controls already installed, and to take other compliance steps that would allow them to meet the requisite standards. *Id.* at 38,519 ("The Agency believes this timeline is as expeditious as practicable considering the potential need for some sources to upgrade or replace pollution controls.").

Earlier this year, on what EPA touted as the "greatest day of deregulation our nation has seen," EPA announced it intended to "reconsider" the 2024 Rule.[2] At the same time, EPA invited coal plants to apply for a two-year Presidential exemption from compliance obligations. EPA subsequently took receipt of numerous such requests. Ex. 7 to Suppl Compl. ECF No. 31-9.

On April 8, 2025, President Trump issued a Proclamation titled *Regulatory Relief for Certain Stationary Sources to Promote American Energy*, later published in the Federal Register at 90 Fed. Reg. 16,777 (Apr. 21, 2025) ("Exemption Proclamation").[3] The Exemption Proclamation granted an unspecified list of coal plants exemptions from compliance with the 2024 Rule "for the period beginning July 8, 2027, and concluding July 8, 2029." Proclamation Announcement (referring to, but not publishing, "Annex I" of exempt sources); *see* 90 Fed. Reg. 16,777. The list of exempt coal plants, known as Annex I, was later published by EPA on its

---

[2] EPA, News Release, *Trump EPA to Reconsider Biden-Harris MATS Regulation That Targeted Coal-Fired Power Plants to be Shut Down* (Mar. 12, 2025), https://www.epa.gov/newsreleases/ trumpepa-reconsider-biden-harris-mats-regulation-targeted-coal-fired-power-plants-be; EPA, News Release, *EPA Launches Biggest Deregulatory Action in U.S. History* (Mar. 12, 2025), https://www.epa.gov/newsreleases/epa-launches-biggest-deregulatory-action-us-history.

[3] The Exemption Proclamation was published initially on the White House's website: https://www.whitehouse.gov/presidential-actions/2025/04/rregulatory-relief-for-certain-stationary-sources-to-promote-american-energy/ ("Proclamation Announcement").

website on April 14, 2025,[4] before being appended to the Exemption Proclamation for publication in the Federal Register. 90 Fed. Reg. at 16,779-84.

Two months later, EPA signed a notice of proposed rulemaking that proposed to repeal the new fPM standard, the new mercury standard, and the CEMS requirements of the 2024 Rule, and solicited public comment. 90 Fed. Reg. 25,535 (June 17, 2025). EPA did not propose to repeal the revised startup standard, which is presently in effect. *Id.* at 25,535, 25,539 n.6 (explaining that "EPA is not reconsidering this aspect of the 2024 Final Action").

The President issued a second Proclamation on July 17, 2025, exempting an additional three coal plants. 90 Fed. Reg. 34,583 (July 23, 2025).[5]

Plaintiffs filed this lawsuit on June 12, 2025, challenging the Exemption Proclamation as contrary to 42 U.S.C. § 7412(i)(4) of the Clean Air Act and in excess of legal authority.

## STANDARD OF REVIEW

Courts have discretion to stay a case to promote efficient use of the court's and litigants' resources, after weighing the benefits and hardships of a stay. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55, 259 (1936); *Allen v. District of Columbia*, No. 20-CV-02453-TSC, 2024 WL 379811 (D.D.C. Feb. 1, 2024). But if there is even "a fair possibility" that the stay "will work damage to some one else," the movant must "make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255-56 (explaining that "the burden of

---

[4] *Available at* https://www.epa.gov/system/files/documents/2025-04/regulatory-relief-for-certain-stationary-annex-1.pdf.

[5] Unlike the April 8, 2025 Exemption Proclamation, the initial publication of the second Proclamation on the White House's website included the list of facilities to which it applied: https://www.whitehouse.gov/presidential-actions/2025/07/regulatory-relief-for-certain-stationary-sources-to-further-promote-american-energy/.

making out the justice and wisdom" of a stay "lay heavily" on the movant). Thus, the movant must either show that (1) the movant's harms meet the heightened "clear case of hardship or inequity" standard, or (2) the opposing party's claims of hardship are non-existent.

A court need not "dismiss or stay a live controversy simply because it may become moot in the future." *All. for Wild Rockies v. Gassman*, No. CV-21-105-M-DLC-KLD, 2022 WL 3030997, at *3 (D. Mont. Aug. 1, 2022) (denying Forest Service's request to stay litigation while it reconsidered decision implementing project following court's entry of preliminary injunction) (citing *Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009)). "A case is moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Samma v. Dep't of Def.*, 136 F.4th 1108, 1113 (D.C. Cir. 2025) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). Mootness arises only if there is nothing for the court to remedy. *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).

## ARGUMENT

### I. An abeyance would harm Plaintiffs whereas Defendants do not show a clear case of hardship

Plaintiffs and their members are being exposed to pollution from exempted coal plants now. They seek to enjoin the Exemption Proclamations to ensure those plants are taking steps *now* to comply with the standards that will alleviate those exposures. The requested six-month abeyance would prejudice Plaintiffs' ability to get prompt, meaningful judicial review of the Exemption Proclamations, and thus to restore the compliance obligations at plants that were unlawfully exempted. By contrast, Defendants identify no hardship from allowing the case to proceed, other than the litigation costs necessary to defend their own unlawful actions. The

balance of these interests strongly favors Plaintiffs, and Defendants therefore fail to meet their burden to stay this case. *Landis*, 299 U.S. at 255–56.

Plaintiffs are environmental and public health organizations with members who live, work, and recreate in areas affected by the mercury, arsenic, and other metals pollution emitted by exempted coal plants. Suppl. Compl. ¶¶ 144, 146, 148-153, 155-160; *see* Decl. of Stephanie Coates ¶¶ 15-19, 23 (attached as Ex. 1); Decl. of Michelle L. Marley-Knox ¶¶ 3-4, 8-9, 12 (attached as Ex. 2); Suppl. Decl. of Michelle L. Marley-Knox ¶¶ 3-4, 6-8 (attached as Ex. 3); Decl. of Derf Johnson ¶¶ 6-9 (attached as Ex. 4); Decl. of Catherine Fleischman ¶¶ 2-3, 7 (attached as Ex. 5); Decl. of Barbara Sue ¶¶ 2-3, 6 (attached as Ex. 6). Plaintiffs' members are concerned that exposure to pollution from exempted plants, including from eating contaminated fish, could have harmful impacts on their health. Suppl. Compl. ¶¶ 144-145, 148-153, 155-160; Coates Decl. ¶¶ 15-17, 21, 23; Marley-Knox Decl. ¶¶ 9-12; Marley-Knox Suppl. Decl. ¶¶ 6, 8; Johnson Decl. ¶¶ 8-9, 11, 13-14; Fleischman Decl. ¶ 4; Sue Decl. ¶¶ 4, 9. These concerns also reduce members' enjoyment of outdoor activities in affected areas. Suppl. Compl. ¶¶ 144, 146-153, 155-160; Coates Decl. ¶¶ 17, 23; Marley-Knox Decl. ¶¶ 8-10, 12; Marley-Knox Suppl. Decl. ¶¶ 6, 8; Johnson Decl. ¶¶ 5-9, 11-14; Fleischman Decl. ¶ 6; Sue Decl. ¶¶ 3-4.

The 2024 Rule will achieve significant reductions in emissions of mercury, arsenic, and other metals each year from coal plants. 89 Fed. Reg. at 38,561. Those emissions reductions—and the steps necessary to secure them—have been occurring since the 2024 Rule took effect and continue apace, as plants take steps to prepare for full compliance by the 2027 deadline. Indeed, states that challenged the 2024 Rule asserted in court filings that "to comply with the Rule's three-year deadline . . . power plants need to take action immediately." Amended Mot. for Stay at 1, *North Dakota v. EPA*, No. 24-1119 (D.C. Cir.), Doc. #2058570 (attached as Ex. 7). Industry

parties have also asserted that these years before the 2024 Rule compliance deadlines are necessary for sources to prepare for compliance. *See, e.g.*, Nat'l Mining Ass'n, Comments on the proposed MATS Rule, 88 Fed. Reg. 24,854, at 12 (June 23, 2023), *available at* https://www.regulations.gov/comment/EPA-HQ-OAR-2018-0794-5986. Plants already must comply with the more stringent startup standard, which had a January 2025 compliance deadline. 89 Fed. Reg. at 38,519, 38,564.

At the latest, the emission reductions required by the 2024 Rule must be achieved by the 2027 deadline. But not so for exempted coal plants. Under the terms of the Exemption Proclamations, no emission reductions will be required between 2027 and 2029. Despite the Clean Air Act's limitation of such exemptions to a two-year period, coal plants have *already* stopped working to reduce their emissions or better control their pollution during the present compliance period (as, indeed, the Administration intended): prospective Defendant-Intervenor Talen, an operator and co-owner of an exempted coal plant, stated that 2024 Rule's compliance deadline "would require substantial and immediate expenditures" but that it has "suspended" compliance activities necessary to meet that deadline "[i]n reliance on the Presidential Exemption." Mem. in Support of Mot. to Intervene, at 1-2, ECF No. 29-1. And others have almost certainly followed suit.

The Exemption Proclamation thus delays the benefits of the reductions in emissions from exempted plants' compliance with the 2024 Rule, and prolongs members' exposure to pollution at present, higher levels. Suppl. Compl. ¶¶ 144, 146-153, 155-160. It also delays the benefits of continuous emissions monitoring systems, denying Plaintiffs and Plaintiffs' members information about coal plant emissions. Supp. Compl. ¶¶ 150-51.

Those consequences flow from the Exemption Proclamation, not from EPA's proposed reconsideration of the 2024 Rule—which did not and could not exempt facilities from compliance with the Rule while it remains good law. The present operation of the Exemption Proclamations is thus denying Plaintiffs' members and the public the benefits that would accrue in the absence of those Proclamations: both the present-day emission reductions from the startup standard and the present and future emission reductions from sources upgrading or installing emissions controls to comply with the 2024 Rule that is presently in force. Indeed, because EPA, state regulators, and exempted coal plants have asserted that certain coal plants must begin preparations *immediately* to be able to meet standards by 2027, a delay in resolving this case could mean compliance by 2027 is not possible, even if the Court ultimately finds it is legally required.[6] *See* Mem. in Support of Mot. to Intervene, at 1-2, ECF No. 29-1 (stating that meeting the 2024 Rule's deadline "would require substantial and immediate expenditures"); *see also* 89 Fed. Reg. at 38,519; Amended Mot. for Stay at 1, 18, *North Dakota v. EPA*, No. 24-1119 (D.C. Cir.) (Ex. 7). Delaying judicial review would thus delay the cleaner air and better health that flows from lower emissions—and to which Plaintiffs and their members are legally entitled.

For these reasons, this case cannot wait on hold for six months. Under such an extended delay, Plaintiffs face the "fair possibility" of securing relief too late for exempted plants to achieve compliance by 2027. *Landis*, 299 U.S. at 255. That outcome would "work damage" to Plaintiffs' members, who will be exposed to more mercury and toxic metal pollution from exempted coal plants—pollution that Plaintiffs seek to reduce by having the exemptions declared

---

[6] Because exemptions may be extended after the two-year period expires, Plaintiffs' members and the public face the prospect of damage to their health and recreational interests for years to come. 42 U.S.C. § 7412(i)(4) ("An exemption . . . may be extended for 1 or more additional periods, each period not to exceed 2 years.").

unlawful. *Id.* For the same reason Defendants issued the exemptions well in advance of the 2024 Rule's deadlines, Plaintiffs have a strong interest in resolving the question of their lawfulness well in advance: the exemptions affect present decisions about the timing of emission reductions.

Defendants have failed to carry their burden of showing a "clear case of hardship or inequity" in proceeding to litigate this case. *Id*. at 255-56 ("the burden of making" the case for a stay "lay heavily" on the movants). Defendants fail to identify any explicit hardship beyond the need to incur the ordinary costs of defending a lawsuit. *See* Mot., at 4, ECF No. 26. Ordinary litigation costs fall short of meeting the heightened standard of a "clear case of hardship or inequity," *Landis*, 299 U.S. at 255-56; *see Lockyer v. Miran Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005), and is outweighed by Plaintiffs' interests in protecting the health of their members and the public from unlawful pollution. That is especially true where the action in question concerns *ultra vires* actions of the Executive Branch—and thus where the government's litigation costs have been brought on by their own choice to assert authority not granted to them by Congress.

It would be inequitable for Defendants to evade timely judicial review of the exemptions they chose to issue merely because they chose also to reconsider aspects of the 2024 Rule. That is especially so given that the Clean Air Act expressly limits EPA's ability to stay the effectiveness of a rule during reconsideration "for a period not to exceed three months." 42 U.S.C. § 7607(d)(7)(B). Defendants should not be permitted to use the court to achieve a back-door stay pending reconsideration for exempted facilities.

Moreover, Defendants cannot reasonably claim that their chosen timing obviates any harm from the Exemption Proclamations; Defendants chose to issue exemptions and pursue repeal of the 2024 Rule at the same time, and presumably would not have done so unless they believed the exemptions had their own, present impact. *Landis*, 299 U.S. at 255-56.

## II. Defendants' claim that agency action may, in the future, moot this case does not justify abeyance

Plaintiffs' challenge to the legality of Defendants' Exemption Proclamations presents a live controversy that can be meaningfully remedied and is therefore not moot. *See Samma*, 136 F.4th at 1113 ("A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." (internal quotation omitted)). As explained above, the exemptions are final and in effect—as is the 2024 Rule—and guide the activities exempted coal plants are taking (or not taking) right now. As described in Section I above, harm to Plaintiffs and their members from postponing emissions reductions is ongoing and will only increase as the 2027 deadline grows closer and compliance steps remain unfinished.

That a potential final action by EPA to rescind the 2024 rule "could" moot this case, as Defendants argue, is not sufficient grounds to put the case in abeyance. Where harm is ongoing, timely review is of the essence, and judicial relief would be effective, "the Court is not obligated to step aside, nor have courts made a habit of doing so—even where a case might become moot shortly." *Conservation Law Found. v. Pritzker*, 37 F. Supp. 3d 254, 265 (D.D.C. 2014); *see also Crawford v. FCC,* 417 F.3d 1289, 1294-95 (D.C. Cir. 2005) (deciding case where FCC action would effectively moot the claim, but that action had not yet become final).[7]

As an initial matter, even if EPA adopts its proposal, it could not entirely moot this case: the 2024 Rule consists of several distinct standards and requirements, and EPA does not propose

---

[7] Other circuits have concluded the same. *See, e.g.*, *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009) (declining to "dismiss a live controversy as moot merely because it may become moot in the near future"); *Muniz v. Sabol,* 517 F.3d 29, 34 (1st Cir. 2008) (controversy "clearly not moot" even where the requested relief would have occurred within a few weeks regardless of the case's outcome); *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 530 n.5 (6th Cir. 2007) (deciding case where superseding legislation would inevitably moot controversy, but law did not take effect for another month).

to repeal or modify *all* of them. For instance, EPA stated that it is "not reconsidering" the more stringent startup standard. 90 Fed. Reg. 25,535, 25,539 n.6 (June 17, 2025). The Exemption Proclamation, on the other hand, exempts power plants "from compliance with the Rule," which seemingly includes the 2024 Rule's startup standard. 90 Fed. Reg. 16,777 (Apr. 21, 2025). Plaintiffs' counts one, two, and three of their complaint encompass a challenge to the Exemption Proclamation as it relates to compliance with the startup standard. *See* Suppl. Compl. ¶¶ 79-83, 164, 173, 177-179, 183-184. Thus, aspects of the Exemption Proclamation would remain a live controversy even if the rule is finalized as proposed.

In any event, any mootness assessment is premature under the circumstances: We know neither *what* action EPA will take on its proposal, nor *when* it will take it. EPA has only *proposed* to repeal aspects of the 2024 Rule; it must now consider and respond to public comments on that proposal. *See* 42 U.S.C. § 7607(d)(5), (6)(B). The Clean Air Act and Administrative Procedure Act require that EPA's rulemakings be based on consideration of law, data, factual findings, and reasoned decision-making, and reflect input from the public. 42 U.S.C. § 7607(d); 5 U.S.C. § 553. These requirements "ensure that agency regulations are tested via exposure to diverse public comment," and provide "notice and the opportunity to be heard" as an essential component of "fairness to affected parties." *Int'l Union, UMW v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1259 (D.C. Cir. 2005) (cleaned up) (citing *Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 547 (D.C. Cir. 1983)).

So, although EPA *could* finalize the action as proposed at the conclusion of the notice and comment process, it runs counter to the core principles of agency responsiveness to public comment to *presume* that it will. EPA also might issue an action with "major changes" from the proposal—which may not ultimately moot the present controversy. *See* 42 U.S.C.

§ 7607(d)(6)(A). Indeed, because the Exemption Proclamation exempts the listed coal plants "from compliance with the Rule," 90 Fed. Reg. at 16,777, leaving even a single requirement of the 2024 Rule in place keeps the issues presented in this case "live" and capable of being remedied. *Larsen v. U.S. Navy*, 525 F.3d 1, 3-4 (D.C. Cir. 2008). EPA could also decide to modify its approach and issue a new proposal,[8] or to rescind the proposal altogether. The Court should not stay this case on the mere possibility the 2024 Rule will be repealed as proposed.

We also do not know *when* EPA will take final action on its proposal. Defendants characterize EPA's intention to promulgate a final rule by December 2025 as a "goal," and it is just that. *See* Mot. at 4, ECF No. 26. EPA is not subject to any legal requirement to act by December 2025 or any other date. A nonbinding statement located on a website expressing EPA's intent to act before the end of the year is not sufficiently concrete to warrant abeyance. *See Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 389 (D.C. Cir. 2012) (emphasizing that a settlement required EPA to issue a final rule by a "definite end date"). Indeed, the D.C. Circuit has cautioned that agencies cannot "stave off judicial review of a challenged rule simply by initiating a new proposed rulemaking that would amend the rule in a significant way." *Id*. at 388.

In any event, if history is any guide, final action is far from imminent. December 2025 is an ambitious goal. In practice, it can take EPA a year or longer to finalize action after the notice

---

[8] In fact, EPA requested comment on alternative standards that the Agency should consider in lieu of repealing the 2024 Rule fPM and mercury standards. 90 Fed. Reg. 25,535, 25,544-45 (June 17, 2025). Plaintiffs are among thousands of commenters on EPA's proposed repeal, and commented, among other things, that there *are* cost-effective intermediate standards. *See, e.g.*, Air Alliance Houston et al., Comments of Public Health and Environmental Organizations on Proposed Rule on National Emission Standards for Hazardous Air Pollutants: Coal- and Oil-Fired Electric Utility Steam Generating Unit (June 17, 2025) (forthcoming at regulations.gov), *available at* https://tinyurl.com/y2uhtnhk.

13

of proposed rulemaking.[9] Indeed, the Agency's last three MATS rulemakings each took more than a year between proposed and final action. *See, e.g.*, 2024 Rule at 38,509 (notice of proposed rulemaking published on April 24, 2023; final rule published on May 7, 2024); National Emission Standards for Hazardous Air Pollutants: Coal-and Oil-Fired Electric Utility Steam Generating Units – Revocation of the 2020 Reconsideration and Affirmation of the Appropriate and Necessary Supplemental Finding, 88 Fed. Reg. 13,956 (Mar. 6, 2023) (proposed rule published February 9, 2022) National Emission Standards for Hazardous Air Pollutants: Coal- and Oil-Fired Electric Utility Steam Generating Units—Reconsideration of Supplemental Finding and Risk and Technology Review, 85 Fed. Reg. 31,286, 31,286-87 (May 22, 2020) (proposed rule published February 7, 2019). Especially in an area of great complexity and public interest, there is reason to doubt that EPA will be able to respond to those comments and finalize a rule in half its typical time.

In contrast, Plaintiffs believe they can proceed expeditiously, with dispositive motions fully briefed this fall. Considering the likelihood of delay in meeting the December 2025 "goal," Plaintiffs are well-positioned to obtain relief before EPA takes final action.

Finally, proceeding with this litigation while EPA's rulemaking proceeds does not present the concerns identified in *American Petroleum Institute v. EPA*, 683 F.3d 382 (D.C. Cir.

---

[9] EPA has asserted as much in signed declarations concerning other rules issued under Section 7412. *See, e.g.*, Decl. of Penny E. Lassiter ¶ 4 & tbl., rows 8-10 (Nov. 4, 2024) (submitted in *Blue Ridge Env't Defense League v. Regan,* No. 1:22-cv-03134, ECF No. 36 (D.D.C.) (attached as Ex. 8) (stating that the "earliest possible completion date" for a Clean Air Act Section 7412 rulemaking on hazardous waste combustors was 10 months from proposal to final rule); Decl. of Panagiotis E. Tsirigotis ¶ 16 tbl. 3, row 4, ¶¶ 22-24 (Oct. 19, 2017) (submitted in *Sierra Club v. Pruitt*, No. 1:16-cv-02461-TJK, ECF No. 13-3 (D.D.C.) (attached as Ex. 9) (identifying the "minimum number of days" for a Clean Air Act Section 7412 technology review rulemaking on solid waste incinerators as one year from proposal to final rule).

14

2012), and the other authorities Defendants cite in support of abeyance. Those cases arose in the context of an agency's reconsideration of the very rules being challenged in the litigation they sought to abate. *See, e.g.*, *id*. at 386-88. Here, by contrast, Defendants seek abeyance of litigation challenging the Exemption Proclamations because EPA is reconsidering an independent agency action, the 2024 Rule. The *exemptions* are not being reconsidered and will not be terminated by whatever action EPA decides to take on the 2024 Rule; the Court is not being asked to review an action that is itself "tentative" or subject to change or "eliminat[ion]." *Id.* at 387-88. And this is not a matter where, as in *Center for Biological Diversity v. EPA*, 56 F.4th 55, 60-61 (D.C. Cir. 2022), *see* Mot. at 4, ECF No. 26, the parties reached a private settlement and jointly requested abeyance to allow time for the settlement's implementation.

Defendants' motion should be denied.

### III. The Court should deny Defendants' alternative request to further extend the responsive pleading deadline

The Court should also deny Defendants' alternative request for a 21-day extension of their deadline to respond to Plaintiffs' complaint. The deadline has been extended twice already, and Defendants have not shown good cause for extending it further. This case has been pending since June. Nothing about the abeyance motion, or the Court's ruling on it, affects *how* Defendants respond to the complaint. The Court should deny their extension request.

### CONCLUSION

For the reasons stated above, the Court should deny Defendants' motion for a six-month abeyance and for a further extension of Defendants' responsive pleading deadline.

DATED: August 19, 2025                                  Respectfully Submitted,

<div style="margin-left:3em">

/s/ Sarah Buckley
Sarah Buckley (Va. Bar No. 87350)
(*Pro Hac Vice*)
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, DC 20005
(202) 836-9555
sbuckley@nrdc.org

Katherine Desormeau (D.D.C. Bar ID CA00024)
Natural Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, California 94104
(415) 875-6100
kdesormeau@nrdc.org

*Counsel for Plaintiff Natural Resources Defense Council*

/s/ Nicholas Morales
Nicholas Morales (D.C. Bar No. 1003942)
Earthjustice
1001 G Street NW, Suite 1000
(202) 667-4500
nmorales@earthjustice.org

*Counsel for Plaintiffs Air Alliance Houston, Clean Air Council, Downwinders at Risk, Montana Environmental Information Center, and Sierra Club*

Surbhi Sarang (CO Bar No. 56667, D.D.C. Bar ID CO0112)
Richard Yates (D.D.C. Bar ID CA00229)
Tomás Carbonell (D.D.C. Bar ID 989797)
Environmental Defense Fund
2060 Broadway Street, Ste. 300
Boulder, Colorado 80302
(303) 440-4901
ssarang@edf.org
ryates@edf.org
tcarbonell@edf.org

</div>

16

/s/ *Sean H. Donahue*
Sean H. Donahue (DC Bar No. 450940)
Donahue, Goldberg & Herzog
1008 Pennsylvania Avenue SE
Washington, DC 20003
(202) 277-7085
sean@donahuegoldberg.com

*Counsel for Plaintiff Environmental Defense Fund*

/s/ *Abel Russ*
Abel Russ (D.D.C. Bar ID 1007020)
Environmental Integrity Project
888 17th Street NW, Suite 810
Washington, DC 20006
(202) 296-8800
aruss@environmentalintegrity.org

*Counsel for Plaintiff Environmental Integrity Project*

/s/ *Brian H. Lynk*
Brian H. Lynk (D.C. Bar No. 459525)
Environmental Law & Policy Center
740 15th Street, NW, Suite 700
Washington, DC 20005
(240) 461-4241
blynk@elpc.org

*Counsel for Plaintiffs Environmental Law & Policy Center and Dakota Resource Council*

/s/ *Shaun A. Goho*
Shaun A. Goho (D.D.C. Bar ID MA0013)
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
(617) 624-0234
sgoho@catf.us

*Counsel for Plaintiff Citizens for Pennsylvania's Future*

<div style="text-align: right">

<u>/s/ *Ryan Maher*</u>
Ryan Maher (D.C. Bar No. 1620024)
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
(781) 325-6303
rmaher@biologicaldiversity.org

*Counsel for Plaintiff Center for Biological Diversity*

</div>