IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AIR ALLIANCE HOUSTON, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, et al., <br><br> *Defendants*. | Civ. No. 1:25-cv-1852-PLF |

**DEFENDANTS' REPLY IN SUPPORT OF ABEYANCE**

In the interest of judicial economy, Defendants seek to hold the case in abeyance for six months: EPA has proposed to repeal a rule that, if finalized, would moot the exemption (from the rule's compliance deadlines) at the heart of this dispute.

Plaintiffs' Opposition misstates two critical points. First, EPA's proposal would repeal the exact requirements—no more, no less—that are the subject of the challenged exemption. The proposed repeal does not, as Plaintiffs assert, leave on the books an exempted requirement. As detailed below, the challenged Presidential Proclamations exempt only those requirements that have a July 2027 compliance date. They do not exempt sources from the revised startup definition, which is currently in effect.

Second, Plaintiffs create a false sense of urgency by alleging that any delay in compliance with the rule's requirements would harm their members' health. In reality, EPA has twice decided—in 2020 and again in 2024—that even without those requirements, public health is protected by an ample margin of safety.

1

This case, in short, should be held in abeyance for the next six months: EPA is finalizing action that could moot this dispute, which is still in its early stages. And abeyance would not imperil public health. The Court should grant Defendants' request.

## BACKGROUND

The Clean Air Act requires EPA to set standards for categories of sources that emit air toxics. 42 U.S.C. § 7412(d). Eight years after setting those standards, EPA must complete a risk review, assessing whether the standards provide "an ample margin of safety" for public health and the environment. *Id.* § 7412(f)(2)(A). Separately, EPA must complete a recurring technology review of these standards every eight years. *Id.* § 7412(d)(6). Finally, "the President may exempt any stationary source from compliance with any standard or limitation under this section for a period of not more than 2 years if the President determines that the technology to implement such standard is not available and that it is in the national security interests of the United States to do so." *Id.* § 7412(i)(4).

In 2012, EPA first promulgated air toxics standards for coal- and oil-fired power plants, 77 Fed. Reg. 9304 (Feb. 16, 2012) ("2012 MATS standards"), and then, in 2020, completed the risk review and first technology review, 85 Fed. Reg. 31286 (May 22, 2020).

Last year, EPA promulgated a rule entitled National Emission Standards for Hazardous Air Pollutants: Coal- and Oil-Fired Electric Utility Steam Generating Units Review of the Residual Risk and Technology Review, 89 Fed. Reg. 38508 (May 7, 2024) ("2024 MATS Rule"), which revised certain 2012 standards based on a reassessment of the 2020 technology review. *Id.* In the same action, EPA decided not to reopen the 2020 risk review. *Id.* at 38518.

The decision let stand the risk review's conclusion that risks from power plants were "acceptable" and that the 2012 MATS standards provide an "ample margin of safety to protect

public health." *Id.* Indeed, it is the 2012 MATS standards that is responsible for the bulk of emission reductions. Though the 2024 MATS Rule would reduce mercury emissions by 900-1,000 pounds annually beginning in 2028, Opp'n at 3, the 2012 MATS standards was estimated to reduce mercury by an estimated 20 tons (or 40,000 pounds) by 2015 from coal-fired units alone, 77 Fed. Reg. at 9424. Similarly the 2024 MATS Rule would reduce certain metals by 4-7 tons per year, Opp'n at 3, while the 2012 standards were estimated to have reduced non-mercury metals by 949 tons over seven years, 84 Fed. Reg. at 2670, 2689 (Feb. 7, 2019).

The effective date of the 2024 MATS Rule was July 8, 2024, and sources have three years to comply with most of its requirements—that is, most requirements do not kick in until July 2027. 89 Fed. Reg. at 38519.

In March 2025, EPA announced its intention to reconsider the 2024 MATS Rule.[1] Shortly thereafter, EPA proposed to repeal most of the 2024 MATS Rule. 90 Fed. Reg. 25535 (June 17, 2025). The comment period on the proposed repeal closed on August 11, 2025. *Id.* EPA has stated that it expects to finalize action on the proposal by the end of the year.[2]

The President issued Presidential Proclamation 10914 on April 8, 2025.[3] 90 Fed. Reg. 16777 (Apr. 21, 2025). The Proclamation states that sources listed in "Annex I of this proclamation, are exempt from compliance with the [2024 MATS] Rule for a period of 2 years, beyond the Rule's compliance date—i.e., for the period beginning July 8, 2027." *Supra* n.3. On

---

[1] Press Release, EPA, Trump EPA to Reconsider Biden-Harris MATS Regulation That Targeted Coal-Fired Power Plants to be Shut Down (Mar. 12, 2025), *available at* https://perma.cc/JW3U-SUP6.

[2] Mercury and Air Toxics Standards, EPA, *available at* https://perma.cc/EGT4-X6A3 ("EPA intends to finalize action on this proposal by December 2025.").

[3] The White House, "Regulatory Relief for Certain Stationary Sources to Promote American Energy" (Apr. 8, 2025), *available at* https://perma.cc/WV8Q-UN4N.

3

July 17, 2025, the President issued Presidential Proclamation 10956, which is substantively identical to Presidential Proclamation 10914 but that it exempts three additional coal plants. 90 Fed. Reg. 34583 (July 23, 2025).

## ARGUMENT

### I. A time-limited abeyance will preserve party and judicial resources.

Defendants request a six-month abeyance to give EPA time to take final action on its proposed repeal of 2024 MATS Rule and to give the parties time to assess the impact of EPA's final action on this litigation. ECF No. 26 ("Abeyance Mot."). As Defendants explained in their Motion, the current rulemaking process is proceeding apace: The comment period has now closed and EPA intends to take final action by December 2025. *Id.* at 4. A repeal of the 2024 MATS Rule (including the compliance deadlines) would moot any compliance exemption.

An abeyance in this situation is consistent with this Court's practice. *See id.* at 3-4. As in *American Petroleum Institute v. EPA*, 683 F.3d 382, 388-89 (D.C. Cir. 2012), EPA is contemplating "a complete reversal of course . . . that, if adopted, would necessitate substantively different legal analysis and would likely moot the analysis [this Court] could undertake if deciding the case now." Plaintiffs attempt to distinguish this case because EPA has proposed to repeal the 2024 MATS Rule, not the challenged Proclamations.[4] Opp'n, ECF No. 34 at 15-16. But that is a distinction without a difference. Once a rule is repealed, an exemption from the rule's deadlines no longer has effect and any dispute over the exemption becomes moot. That is true whether the rule itself is the subject of this challenge or not. The

---

[4] As the exemption was granted by the President and not EPA, EPA does not have the authority to reconsider the Presidential Proclamations.

4

same considerations that weigh in favor of abeyance when an agency reconsiders a challenged rulemaking thus favor abeyance of this case.

Nor can the 2024 MATS Rule's revised "startup" definition keep this litigation alive if EPA's proposed repeal is finalized. *Contra* Opp'n at 15. True, the proposed repeal does not seek to change the revised "startup" definition. 90 Fed. Reg. at 25539 n.6. But Presidential Proclamations 10914 and 10956—which granted a two-year exemption from the Rule's compliance date "beginning July 8, 2027, and concluding July 8, 2029"—did not extend the deadline to comply with the revised "startup" definition, which was January 2025, 89 Fed. Reg. 38566.[5] Indeed, Plaintiffs acknowledge that requirement is currently in effect. Opp'n at 8.

Presidential Proclamations 10914 and 10956 exempt sources only from complying with the revised standards that take effect in July 2027, which EPA has proposed to repeal. Those requirements are: (1) the filterable particulate matter limit (fPM) of 0.010 lb/MMBtu for affected coal-fired sources, (2) the mercury limit of 1.2 lb/TBtu for lignite-fired sources, and (3) the requirement that sources demonstrate compliance with the fPM limit using particulate matter continuous emission monitoring systems. 89 Fed. Reg. at 38519. These are the requirements—not the revised "startup" definition already in effect—that benefit from the exemption period of July 2027 to July 2029. To that end, the Proclamations included determinations that the relevant technology to implement the 2024 MATS Rule "by its compliance date of July 8, 2027" is unavailable. 90 Fed. Reg. at 16777 (Proclamation 10914); 90 Fed. Reg. at 34583 (Proclamation

---

[5] EPA did not revise "startup" definition as not part of the Clean Air Act Section 112(d)(6) technology review but promulgated it in response to a remand from this Court following *Chesapeake Climate Action Network* v. *EPA,* 952 F.3d 310 (D.C. Cir. 2020). 89 Fed. Reg. at 38550/2; 90 Fed. Reg. at 25539 n.6. In contrast, the standards with July 2027 deadlines resulted from the section 112(d)(6) technology review. 89 Fed. Reg. at 38508/1, 38519/2.

10956). EPA's proposal to repeal these revised standards, if finalized, would therefore moot this litigation. 90 Fed. Reg. at 25537. The revised "startup" definition Plaintiffs rely on is unaffected by the exemption and thus would not save this action from mootness if EPA finalizes its proposed repeal.

Though the ultimate result of EPA's ongoing rulemaking on the proposed repeal is uncertain, this Court does not require absolute certainty in outcome before placing cases in abeyance. "Abeyance may be warranted where there are legitimate developments that *could* obviate the need for judicial review, such as when…an agency plans to reconsider a challenged rule." *Utah v. EPA,* No. 23-1157, 2025 WL 1354371, at *2 (D.C. Cir. May 2, 2025) (emphasis added). Parties and the Court thus need not turn a blind eye to the fact that EPA has proposed an action that would moot this litigation. *Cf. Ctr. for Biological Diversity v. EPA*, 56 F.4th 55, 71 (D.C. Cir. 2022).

Moreover, this is not a situation like *Crawford v. FCC*, 417 F.3d 1289, 1295 (D.C. Cir. 2005), where a development related to mootness was raised during merits briefing. *Contra* Opp. at 11-12. Here, the parties are in the early stages of litigation. It is well within this Court's discretion to abate proceedings when briefing and judicial review may shortly be rendered unnecessary.

Contrary to the Opposition, Defendants did not argue that this Court was "obligated to step aside," Opp'n at 11, only that abeyance would preserve party resources, serve judicial economy, and adhere to this Court's practice. *See* Abeyance Mot. at 3-4 (citing cases). None of the examples Plaintiffs offer warrants a different result: the cases cited at Page 11 n.7, of the Opposition all deal with mootness, but EPA moved for an abeyance on the grounds that the case may shortly *become* moot, not that it is moot now.

Finally, Plaintiffs' speculation that EPA will not meet its anticipated December 2025 timeline for final action does not render abeyance inappropriate now. Opp'n at 13-14. EPA has stated its intended timeline and requested an abeyance to accommodate that timeline. Abeyance Mot. at 6. The time-limited nature of EPA's abeyance request belies Plaintiffs' concern: if Plaintiffs are correct and EPA fails to take final action on its anticipated schedule, Plaintiffs may address that issue when the abeyance expires less than two months later.

This case is in its early stages, and it makes no sense to dive into dispositive motions that could ultimately be mooted in four months. A limited abeyance now is in the interest of judicial economy and will allow the parties to assess the impact of EPA's forthcoming final action on this litigation.

**II.     Plaintiffs fail to demonstrate they will be immediately and significantly harmed by a time-limited abeyance.**

Plaintiffs raise a host of arguments in opposition to Defendants' abeyance request, none of which overcomes the fact that the source of Plaintiffs' alleged harm—the challenged exemption—remains nearly two years away. A six-month abeyance now will not impair Plaintiffs' ability to obtain judicial review of the challenged exemption, if it remains operative, before July 2027.

First, Plaintiffs argue that exempted facilities have ceased preparations for complying with the 2027 deadlines, thereby "delay[ing] the benefits of the reductions in emissions from exempted plants' compliance with the 2024 MATS Rule." Opp'n at 8. In other words, Plaintiffs allege they would benefit from emissions reductions *in advance* of the original July 2027 compliance deadline, as facilities work to come into compliance. *Id.* But if exempted facilities are delaying compliance measures on the assumption that they have until July 2029 to comply, that is not the result of Defendants' requested abeyance. And Plaintiffs have not sought a stay of

7

the Presidential Proclamations, the sources of the challenged exemption. Moreover, the *Landis v. North American Co.*, 299 U.S. 248, 255 (1936) standard that Plaintiffs cite concerns whether an abeyance would damage the non-moving party. *See* Opp'n at 12. Though Plaintiffs count on unquantified emissions reductions that may occur before the Rule's July 2027 compliance deadline, this alleged speculative harm does not flow from the requested six-month abeyance that would end more than a year before the exemption's effective date (July 8, 2027).

      Second, Plaintiffs argue that a six-month abeyance would impair their ability to obtain judicial review with sufficient time for exempted sources to comply by July 2027. The 2024 MATS Rule set forth a three-year compliance timeline for most deadlines in the Rule, one year of which has passed. 89 Fed. Reg. at 38519. Presumably, between May 2024 and April 2025 (when the President first announced the 2027-2029 exemption), facilities were taking the necessary steps to prepare for compliance—or delaying those steps at their own risk. Still, even with a six-month abeyance, this case will likely be resolved before July 2027, assuming this matter were to move forward. Plaintiffs argue that facilities should be taking compliance steps immediately, but Plaintiffs have not shown that a six-month abeyance of this litigation would make or break compliance for exempted facilities by July 2027, as opposed to the current litigation schedule.

      And though Plaintiffs focus on anticipated harms to public health from missed emissions reductions that would occur under the 2024 MATS Rule, that Rule set those emission standards based on EPA's technology review alone, 42 U.S.C. § 7412(d)(6), not based on risks to public health, *id.* § 7412(f)(2). 89 Fed. Reg. at 38508. Indeed, the 2020 risk review concluded that the 2012 MATS standards—which will remain in place regardless of the Proclamations and regardless of whether EPA repeals the 2024 MATS Rule—provide "an ample margin of safety to

protect public health and prevent an adverse environmental effect." 85 Fed. Reg. 31286, 31314 (May 22, 2020). In promulgating the 2024 MATS Rule, EPA decided against revisiting that finding. 89 Fed. Reg. at 38518. EPA's 2023 proposal affirmed that "the risk analysis was a rigorous and robust analytical review" and that the 2020 assessment "indicated low residual risk from the coal- and oil-fired EGU source category." 88 Fed. Reg. at 24866. In other words, even without the 2024 MATS Rule, regulated sources would still all be subject to standards that EPA has determined provide "an ample margin of safety to protect public health." 42 U.S.C. § 7412(f)(2)(A). That fact belies Plaintiffs' repeated claims that either the exemption from the 2024 MATS Rule or an abeyance would harm their members' health. *E.g.*, Opp'n at 6-7, 10.

In sum, the prejudice alleged by Plaintiffs falls closer to "mere uncertainty or additional proceedings that might result from deferred review," which is accorded less weight than the potential prejudice suffered by an entity that may "be required to engage in, or refrain from, any conduct." *Utah*, 2025 WL 1354371 at *2 (Rao, J.) (quoting *Devia v. Nuclear Regul. Comm'n*, 492 F.3d 421, 427 (D.C. Cir. 2007)). And, chiefly because the exemption challenged here will not take effect until July 2027, Plaintiffs cannot show they are subject to immediate harm that outweighs the interest of judicial economy.

### III.    Alternatively, Defendants Request a Brief Extension to File a Responsive Pleading.

Defendants request that, if the Court denies the abeyance request, the Court extend the time to file a responsive pleading to 21 days after such denial. Plaintiffs oppose this request noting that the case has been pending since June. While true, Plaintiffs fail to note that they moved to file a supplemental complaint less than a month ago, on August 8, 2025. ECF No. 31. While Defendants did not oppose Plaintiffs' motion, we responded solely to address the pleading deadline, and again requested that if the Court granted Plaintiffs' motion and denied the abeyance

9

motion, the Court extend the time to respond to the supplemental complaint to 21 days after such denial. ECF No. 32. Defendants' request is reasonable and supported by good cause. If this case is not placed in abeyance, Defendants intend to file a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b). Requiring parties to expend resources on briefing dispositive motions when the case may be placed in abeyance because it shortly may be mooted would ultimately undermine some of the benefits of the requested abeyance. As noted above, Plaintiffs have not identified any legitimate immediate harm that would accrue if Defendants were granted an extension of time to respond to the supplemental complaint if the Court denies the abeyance request.

## CONCLUSION

This Court should grant Defendants' Motion and enter an order abating this matter for six months. Alternatively, Defendants request that, if the Court denies this abeyance request, the Court extend their time to file a responsive pleading to 21 days after such denial.

Respectfully submitted,

DATED:      August 26, 2025

ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*

*Of Counsel*:

ROBERT N. STANDER
*Deputy Assistant Attorney General*

HOWARD J. HOFFMAN
Office of the General Counsel
U.S. Environmental Protection Agency

*/s/Laura J. Brown*
ZOE B. PALENIK
LAURA J. BROWN
Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-5314
Laura.j.s.brown@usdoj.gov

10

11

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2025, I electronically filed the foregoing Reply by using the CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Laura J. Brown*