IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AIR ALLIANCE HOUSTON, et al., *Plaintiffs*, v. DONALD TRUMP, et al., *Defendants*. | Case No. 1:25-cv-1852-PLF |

**AMICUS CURIAE BRIEF FOR MINNESOTA, CONNECTICUT, DELAWARE, MAINE, MARYLAND, MASSACHUSETS, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, RHODE ISLAND, AND VERMONT IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER GRANTING ABEYANCE**

Date: October 29, 2025

**KEITH ELLISON**
Attorney General State of Minnesota

PETER SURDO
ALYSSA BIXBY-LAWSON
CATHERINE RIOS-KEATING
Special Assistant Attorneys General

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
651-757-1061
peter.surdo@ag.state.mn.us
Alyssa.Bixby-Lawson@ag.state.mn.us
Catherine.rios-keating@ag.state.mn.us

ATTORNEYS FOR AMICUS CURIAE THE STATE OF MINNESOTA

## INTEREST OF AMICUS CURIAE AND INTRODUCTION

Pursuant to the District Court's Local Rule 7(o), State Amici—Minnesota, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New Mexico, New York, Oregon, Rhode Island, and Vermont (the "Amici States")—submit this amicus brief in support of the Plaintiffs' Motion for Reconsideration of Order Granting Abeyance.[1] Amici States have a strong interest in protecting their residents, natural resources, economies, and cultural resources and practices from the harms that the 2024 Rule[2] is designed to combat. We therefore urge the court not to delay resolution of the Plaintiffs' claims concerning the unprecedented and unlawful Presidential Proclamations challenged in this litigation.

Amici States agree with Plaintiffs that the balance of equities weigh strongly against an abeyance in this case for the reasons already explained in Plaintiffs' opposition and motion for reconsideration. *See* ECF Nos. 34, 37. Among other things, the 2024 Rule strengthens standards that protect public health and natural resources from the emission of hazardous air pollutants including mercury, arsenic, and lead. For example, a small number of plants comprising just two percent of the

---

[1] Amici are states and therefore permitted to submit this brief without preclearance from the Court. LCvR 7(o)(1).

[2] *National Emission Standards for Hazardous Air Pollutants: Coal- and Oil-Fired Electric Utility Steam Generating Units Review of the Residual Risk and Technology Review*, 89 Fed. Reg. 38,508 (May 7, 2024).

2

nation's overall generating capacity will be affected by the mercury standards in the 2024 Rule because they use lignite coal as a fuel source and were exempted from the 2012 version of the rule that applied mercury standards to the rest of the industry.

The 2024 Rule requires a limited number of the worst-performing plants to implement the proven, cost-effective, and feasible technologies already used by the rest of the industry to achieve the emission levels the rule adopts. A stay of adjudication will harm Amici States by contributing to the regulatory uncertainty surrounding those plants' obligations to comply with the 2024 Rule, encouraging them to defer action to mitigate the harmful emissions that the 2024 Rule targets. In particular, the plants will delay plans to install and operate new pollution control technologies or upgrade existing controls,[3] including the addition of continuous emission monitoring systems (for plants that do not already have them), which will ensure that emissions exceedances are detected and corrected immediately. ECF No. 34 at *8-*9.

Further, deferring resolution of the novel legal issues raised in this case will

---

[3] EPA, *Mercury and Air Toxics Standards (MATS) for Coal-Fired Power Plants Review of the 2020 Residual Risk and Technology Review (RTR) Final Rule*, https://www.epa.gov/system/files/documents/2024-04/presentation_mats_final-2024-4-24-2024.pdf, at 11 (Apr. 25, 2024) (identifying only 22 plants nationwide that EPA expected may need to update controls to meet MATS, 10 of which are lignite-fueled.)

give Defendants a green light to employ the same dubious legal rationale invoked here to exempt other regulations of hazardous air pollutants—circumventing normal notice-and-comment rulemaking that would otherwise apply. Moreover, the important legal questions raised in this case are not likely to be mooted even if EPA eventually repeals the 2024 Rule. That is because they present issues that are capable of repetition yet evade review.

## ARGUMENT

While the court has "inherent" power to "control the disposition of the causes on its docket with economy of time and effort," a stay of proceedings should only be granted in "rare circumstances." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). Indeed, "if there is even a fair possibility" that a stay "will work damage to some one else," an abeyance should be denied unless the movant "make[s] out a clear case of hardship or inequity in being required to go forward." *Id.* Defendants have not made such a showing here, and in fact the equities and public interest weigh decisively in the other direction. Moreover, failing to review deployment of the presidential powers at issue in this case allows the executive branch to continually avoid review as it repeats the same action across several industries.

### I.  A stay is harmful to Amici States.

The 2024 Rule sets the United States on course to achieve significant emissions reductions from the worst contributors of mercury and other hazardous

air pollution. Today, those lignite plants disproportionately emit hazardous air pollutants such as mercury.[4] Here is a map that shows mercury emissions, with obvious hotspots remaining in areas where lignite coal is mined and burned (North Dakota, Texas, and Mississippi):



Dai, et al., Env't. Sci. & Tech. Letters, *Sociodemographic Disparities in Mercury Exposure from U.S. Coal-Fired Power Plants* at Fig. 1 (2023), https://pubs.acs.org/doi/10.1021/acs.estlett.3c00216?ref=pdf; *see also* 89 Fed. Reg. 38,538 fn65 ("Currently, the approximately 22 units that are permitted as lignite-fired EGUs are located exclusively in North Dakota, Texas, and Mississippi.").

The 2024 Rule protects Amici States from continued and accumulating

---

[4] Measured by emissions per unit of energy generated.

exposure to mercury deposits, as well as non-mercury metals and particulate matter.

Amici States are acutely concerned with exposure to mercury, a potent and persistent toxic metal that causes neurological, renal, cardiovascular, and other harms to humans and animals. *See* 89 Fed. Reg. at 38,515. Fetuses and young children are especially vulnerable to mercury's harmful effects. *See id.* Once released to the air by industrial sources such as coal-fired power plants, mercury can travel long distances before depositing into soil and waterbodies, where it transforms into methylmercury and accumulates through the aquatic food chain. 89 Fed. Reg. at 38,515. Consumption of contaminated fish is the primary source of human exposure to mercury. *Id.* Across the nation, including in Amici States, mercury contamination of water bodies—largely due to deposition of mercury from sources like coal-fired plants—is a widespread and substantial problem. *North Dakota. v. EPA*, Opposition of Intervenor-Respondents to Petitioners' Motions to Stay (Doc. 2065877), No. 24-1119 at *15 (D.C. Cir. Jul. 23, 2024) ("Stay Opposition"). Tens of thousands of river and stream miles and millions of acres of lakes, reservoirs, and ponds are designated as impaired under Clean Water Act section 303(d), 33 U.S.C. §1313(d), due to mercury contamination, including many waterbodies located on state lands or held in public trust within Amici States' jurisdictions. *Id*. That contamination has harmed Amici States' recreational, commercial, and cultural access to fishing; required many of Amici States to implement state- and region-

wide "total maximum daily loads" ("TMDLs") to meet federal water quality standards; and necessitated widespread fish consumption advisories that impose monitoring and implementation costs on our agencies. *Id*. at *15-*16 (noting Minnesota's 1,696 mercury-impaired water bodies, corresponding fish consumption advisories, and disproportionate impact on Tribal communities); *see also* EPA, *Impaired Waters and Mercury*, https://www.epa.gov/tmdl/impaired-waters-and-mercury (last updated Aug. 8, 2025). Similarly, in the Northeast, which is subject to a region-wide mercury TMDL, (*id*.), atmospheric deposition must be reduced by 98 percent to enable the lifting of fish consumption advisories, necessitating significant reductions from out-of-state sources such as coal-burning power plants. Stay Opposition at *15-*16. Given the prevailing direction of the jet stream, which blows from west to east, many of the Amici States are similarly situated "downwind" of coal-fired power plants and thus bear the burden of cross-border emission of harmful pollutants. *Id*. at *96. The 2024 Rule helps to address Amici States' mercury concerns by requiring the worst polluters to take steps to reduce their mercury emissions. 89 Fed. Reg. 38,508.

Amici States are also greatly concerned with the emission of hazardous non-mercury metal pollutants—including other toxins such as lead, arsenic, chromium, and nickel—that are associated with a wide range of serious health harms including neurological, cardiovascular, immunological, reproductive, liver, kidney, and

7

respiratory effects, as well as cancer. *See* 89 Fed. Reg. at 38,515. The 2024 Rule controls toxic non-mercury-metal emissions by limiting power-plant emissions of the particulate matter that contains those pollutants. 89 Fed. Reg. at 38,529. It also requires power plants to install continuous emissions monitoring systems that will ensure compliance and provide data to state regulators, communities, and other stakeholders about exceedances.

Harms from non-mercury pollutants too often fall disproportionately on communities of color, low-income communities, and Indigenous communities. Stay Opposition at *17. The coal-fired power plants subject to the 2024 Rule in turn disproportionately contribute to that disproportionate harm. *Id*. In Pennsylvania, for example, three of the five coal-fired plants required under the 2024 Rule to reduce emissions of hazardous non-mercury metals are located in environmental justice areas. *Id*. In addition, the Rule's more stringent non-mercury metals controls will assist the States in attaining federal air regulatory requirements, such as the National Ambient Air Quality Standards (NAAQS) for particulate matter, as well as regional haze reduction goals. Stay Opposition at *18. Such reductions have quantifiable health benefits and help Amici States protect their vulnerable communities and meet Amici States NAAQS requirements.

Amici States have a strong interest in achieving the benefits promised by the 2024 Rule, but the timing of the Presidential Proclamations at issue in this matter

8

would thwart much-needed progress toward Amici States' goals—which include lifting fish advisories, meeting mercury TMDLs, reducing health impacts, and achieving particulate matter NAAQS. The 2024 Rule has a three-year compliance period, and we are now in year two. In order to install and implement the control technologies and operational changes on time, operators of affected power plants must take necessary steps <u>now</u>. Indeed, as the operators of those facilities swore last year in court, complying with the 2024 Rule would require immediate expenditures and action in year one.[5] Efforts to comply with the 2024 Rule certainly should be underway now. Indeed, many facilities' applications for, and receipt of, Presidential Proclamations underscore that reality. *EPA, Clean Air Act Section 112 Presidential Exemption Information*, https://www.epa.gov/stationary-sources-air-pollution/clean-air-act-section-112-presidential-exemption-information (last updated Apr. 14, 2025); *Regulatory Relief For Certain Stationary Sources To Further Promote American Energy*, 90 Fed. Reg. 16,777 (Apr. 8, 2025).

But as Plaintiffs demonstrate in their motion (*see* ECF No. 37 at *4-*6), the Presidential Proclamations challenged here would allow the worst polluters to delay

---

[5] "Petitioner utilities must immediately embark on" projects to install the required emissions controls. *North Dakota v. EPA*, Petitioners' Motion For Stay Of The Final Rule (Doc. 2061137), No. 24-1119 at *20 (D.C. Cir. June 21, 2024) ("Stay Motion"). As they swore to that court, "the engineering, design, permitting procurement, sourcing, and installation necessary to comply with the Final Rule would require ***immediate*** expenditures to accommodate the long lead time for these processes." *Id*. at *24 (emphasis in original).

9

undertaking the emissions-monitoring and abatement steps that the 2024 Rule requires. Deferring resolution of Plaintiffs' legal claims prolongs the regulatory uncertainty that the Presidential Proclamations create. That regulatory uncertainty disincentivizes polluters from taking meaningful steps to comply with the 2024 Rule. In this way, a stay not only forestalls attaining the emissions reductions that the Rule requires but also impedes Amici States from achieving their own public-health goals that depend on those reductions. *See supra* Section I.

**II. There is no corresponding hardship on Defendants.**

The 2024 Rule sets the United States on course to achieve significant emissions reductions from the worst contributors of mercury and other hazardous air pollution. In the face of these important interests to Amici States and the public at large in seeing the present litigation go forward, the Defendants fail to demonstrate any "hardship or inequity" on their part that would warrant an abeyance. *Landis*, 299 U.S. at 254.

Instead, Defendants principally argue that an abeyance is needed because the issues in this case might someday become moot given proposed rescission-by-rulemaking. (*See* ECF No. 26, at 3-4.) But that contingency does not justify a stay because the novel issues raised here are ripe for review now and are distinct from any issue that will arise if EPA eventually rescinds the 2024 Rule in its entirety. To Amici States' knowledge, the Section 112(i)(4) exemption provision has never been

used as in the challenged Presidential Proclamation, much less litigated. The fact that it has been deployed in an unlawful manner is all the more reason for this Court to adjudicate Plaintiffs' claims.

Moreover, the important issues raised in this litigation are capable of repetition, yet evading review. *See, e.g.*, *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016). Indeed, as Plaintiffs demonstrate (*see* ECF No. 37 at *8-*9), the issues in this case have already arisen repeatedly, as the Defendants seek to apply Section 7412(i)(4) to an ever-expanding set of circumstances—often with compounding harms to the Amici States. And due to the temporary nature of the exemptions granted under Section 7412, Defendants' conduct could evade judicial review in every case if Defendants are permitted to moot the issue by rescinding the underlying rules.

### III. The Court should not delay adjudication.

Deferring resolution of the important legal issues in this case would have the practical effect of sanctioning Defendants' dubious deployment of Section 7412(i)(4) to eliminate compliance with other important hazardous air pollutant regulations. This effectively grants preemptive relief to polluters without confronting the conventional regulatory processes for stay or rescission of a rule. *See*, *e.g.*, 42 § 7607(d)(7)(B) (limiting EPA's authority to issue an administrative stay to three months). This is not a remote possibility. As Plaintiffs explain (*see* ECF

11

No. 37, at *2, *fn3, and *8-*9, *fn6), Defendants have already granted similar exemptions to 97 polluters from three other hazardous-air-pollutant rules. Additional exemptions appear imminent.[6]

As with the Defendants' informal gutting of the 2024 Rule in this case, these additional exemptions portend grave public-health harms to Amici States' residents. Given these stakes, Amici States have a critical interest in seeing that the novel legal questions raised in this case are promptly resolved. This will ensure Defendants follow standard procedures, here and in similar (*i.e.*, repeatable) cases, to allow states and other members of the public a meaningful opportunity to review and weigh in on Defendants' substantive rulemaking efforts.

## CONCLUSION

For the foregoing reasons, Amici States urge the Court to allow this case to move forward expeditiously and to grant the Plaintiffs' motion for reconsideration of the order granting abeyance.

---

[6] Some of these additional exemptions have cumulative and compounding impacts. For example, the executive branch has also issued Section 112(i)(4) exemptions to the taconite ore processing industry, (ECF. No 37 at *fn6), which is also a major emitter of mercury impacting northern Minnesota—the same area subject to a TMDL that receives emissions from lignite coal plants in North Dakota. Stay Opposition at *14-*18,

| | |
|---|---|
| DATED: October 29, 2025 | Respectfully Submitted, |
| **KEITH ELLISON**<br>Attorney General of the State of Minnesota | **WILLIAM TONG**<br>Attorney General for the State of Connecticut |
| */s/Peter Surdo*<br>PETER SURDO<br>ALYSSA BIXBY-LAWSON<br>CATHERINE RIOS-KEATING<br>Special Assistant Attorneys General<br>445 Minnesota Street, Suite 1400<br>St. Paul, Minnesota 55101-2131<br>Peter.surdo@ag.state.mn.us<br>Alyssa.Bixby-Lawson@ag.state.mn.us<br>Catherine.rios-keating@ag.state.mn.us | */s/ Scott N. Koschwitz*<br>MATTHEW I. LEVINE<br>Deputy Associate Attorney General<br>SCOTT N. KOSCHWITZ<br>Assistant Attorney General<br>Office of the Attorney General<br>165 Capitol Ave, Hartford, CT 06106<br>(860) 808-5250<br>Matthew.Levine@ct.gov<br>Scott.Koschwitz@ct.gov |
| ATTORNEYS FOR STATE OF MINNESOTA | ATTORNEYS FOR STATE OF CONNECTICUT |
| **KATHLEEN JENNINGS**<br>Attorney General of State of Delaware | **AARON M. FREY**<br>Attorney General of Maine |
| */s/ Vanessa L. Kassab*<br>IAN R. LISTON<br>Director of Impact Litigation<br>VANESSA L. KASSAB<br>Deputy Attorney General<br>Delaware Department of Justice<br>820 N. French Street<br>Wilmington, DE 19801<br>(302) 683-8899<br>Vanessa.Kassab@delaware.gov | */s/ Emma Akrawi*<br>EMMA AKRAWI<br>Assistant Attorney General<br>Office of the Maine Attorney General<br>6 State House Station<br>Augusta, ME 04333<br>(207) 626-8800<br>Emma.Akrawi@maine.gov |
| ATTORNEY FOR STATE OF DELAWARE | ATTORNEY FOR STATE OF MAINE |

**ANTHONY G. BROWN**
Attorney General of the State of Maryland

*/s/Steven Goldstein*
STEVEN J. GOLDSTEIN
Assistant Attorney General
Office of the Attorney General of Maryland
200 Saint Paul Place
Baltimore, Maryland 21202
410-576-6414
sgoldstein@oag.state.md.us

ATTORNEY FOR STATE OF MARYLAND

**RAÚL TORREZ**
Attorney General for the State of New Mexico

*/s/ William Grantham*
WILLIAM GRANTHAM
Assistant Attorney General
408 Galisteo Street
Santa Fe, New Mexico 87501
Tel. (505) 717-3520
wgrantham@nmdoj.gov

ATTORNEY FOR STATE OF NEW MEXICO

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

*/s/ Tracy Triplett*
TRACY TRIPLETT
Senior Enforcement Counsel
Energy and Environment Bureau
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2431
tracy.triplett@mass.gov

ATTORNEY FOR STATE OF MASSACHUSETTS

**MATTHEW J. PLATKIN**
Attorney General of New Jersey

*/s/ Lisa J. Morelli*
LISA J. MORELLI
Deputy Attorney General
New Jersey Division of Law
25 Market Street
Trenton, New Jersey 08625
Tel: (609) 900-0782
Email: Lisa.Morelli@law.njoag.gov

ATTORNEY FOR STATE OF NEW JERSEY

**LETITIA JAMES**
Attorney General of New York

*/s/ Matthew Eisenson*
MATTHEW EISENSON
Assistant Attorney General
MICHAEL J. MYERS
Senior Counsel
Environmental Protection Bureau
Office of the Attorney General
28 Liberty Street, 19th Floor
New York, NY 10005
(212) 416-8481
matthew.eisenson@ag.ny.gov

COUNSEL FOR STATE OF NEW YORK

**DAN RAYFIELD**
Attorney General of Oregon

*/s/ Paul Garrahan*
PAUL GARRAHAN
Attorney-in-Charge,
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(503) 947-4540
Paul.Garrahan@doj.oregon.gov

ATTORNEY FOR STATE OF OREGON

**PETER F. NERONHA**
Attorney General of Rhode Island

*/s/ Nicholas Vaz*
NICHOLAS VAZ
Special Assistant Attorney General
Environment and Energy Unit Chief
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Phone: (401) 274-4400 ext. 2297
Email: nvaz@riag.ri.gov

ATTORNEY FOR STATE OF RHODE ISLAND

**CHARITY R. CLARK**
Attorney General of Vermont

*/s/ Hannah Yindra*
HANNAH YINDRA
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3186
Hannah.Yindra@vermont.gov

ATTORNEY FOR STATE OF VERMONT